**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN BRANCH**

| | |
|---|---|
| **RACHAEL S. RUIZ, individually** ) | |
| ) | |
| ) | **CASE NO. 1:18-cv-52** |
| *Plaintiff.* ) | |
| v.    ) | **COMPLAINT** |
| ) | **FOR VIOLATION OF CIVIL** |
| **ARLENE SERRANO- DANZY, in her individual** ) | **RIGHTS (42 U.S.C. § 1983);** |
| **capacity, OFFICER GABRIEL DOBKIN, in** ) | |
| **his individual capacity, OFFICER VICK** ) | |
| **STAN in his individual capacity; CITY OF** ) | |
| **AUSTIN, a public entity, and DOES 1 THRU** ) | **JURY TRIAL DEMANDED** |
| **10, Inclusive.** ) | |
| ) | |
| *Defendants.* ) | |

---

## COMPLAINT

---

Plaintiff, RACHAEL S. RUIZ ("RACHAEL"), for their Complaint against the above-named Defendants, respectfully state and allege as follows:

## **JURISDICTION**

1.  Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights, secured to Plaintiffs under the 14th Amendment to the Constitution of the United States.

2.  Jurisdiction is conferred on this Court by 28 U.S.C. Sections 1343(a)(3) and (a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. Section 1983. Jurisdiction is also conferred by 28 U.S.C. Section 1331 because claims for relief derive from the Constitution of the United States and the laws of the United States.

3. Venue is properly established in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. Section 1391, in that the events and circumstances herein alleged occurred in the City of Austin, Texas, and all of the Defendants were either employed in or are residents of Travis County in the State of Texas where jurisdiction is the United States District Court for the Western District of Texas, located in Austin, Texas.

## PARTIES

4. At all times relevant to the facts and circumstances in the Complaint, Plaintiff **RACHAEL S. RUIZ ("RACHAEL")** was a resident of Lake Charles, Louisiana and a native American Indian (25% Choctaw and 50% Chippeawa). RACHAEL is the biological mother and primary caretaker of minor **AVR** who was 2 years old at the time of the incident. Initials are used to protect the privacy of the minor.

5. At all times applicable herein, Defendant social worker/ investigator **ARLENE SERRANO-DANZY ("DANZY")** was an individual residing and/or employed in Travis County, Texas, and an officer, agent, and/or employee of the Texas Department of Family and Protective Services ("TDFPS") and whose acts as alleged herein were performed in her individual capacity and/or under color of state law. She is employed by TDFPS.

6. Defendant police officer **GABRIEL DOBKIN ("DOBKIN")** was an individual residing on information and belief, in Travis County, Texas, and an officer, agent, and/or employee of the Austin Police Department, City of Austin, Texas and whose acts as alleged herein were performed in his individual capacity and/or under color of state law. He is employed by the City of Austin Police Department.

7. Defendant police officer **VICK STAN ("STAN")** was an individual residing, on information and belief, in Travis County, Texas, and an officer, agent, and/or employee of the Austin Police Department, City of Austin, Texas and whose acts as alleged herein were performed in his individual capacity and/or under color of state law. He is employed by the City of Austin Police Department.

8. Defendant **CITY OF AUSTIN ("AUSTIN")** is a government entity, duly organized and

existing under the laws of Texas. At all times herein the Austin Police Department was law enforcement arm of the City of Austin and under the administrative and operational control of the City of Austin. Plaintiffs are informed and believe, and on such basis allege, that each of the named Defendants was and is the agent, employee, principal, employer and/or co-conspirator of each of the remaining Defendants and/or vice versa. In addition, Plaintiffs are informed and believe, and on such basis allege, that the Defendants named hereinabove, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named Defendants conspired with, and/or sided and/or abetted and/or jointly collaborated with each of the remaining Defendants and identified persons in committing the acts herein alleged.

9. Plaintiffs are informed and believe and on such basis allege that each of the above named Defendants and acting as co-conspirators was acting under the color of state law in committing the acts herein alleged, and that in doing the things herein alleged Defendants, and each of them, were acting within the course and scope of their duties as employees or agents of each other.

10. Plaintiffs are ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 10, and for that reason have sued such Defendants under such fictitious names. Plaintiffs reserve their rights, and will seek leave of Court to amend this Complaint to identify said Defendants when their identities have been ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants was in some manner liable and legally responsible, in that their conduct caused the damages and injuries set forth herein.

11. Plaintiffs are informed and believe and on such basis allege that at all relevant times, Defendants, and each of them, were the knowing agents and/or alter egos of one another, and that Defendants directed, ratified, and/or approved the conduct of each of the other Defendants, and each of their agents or employees, and are therefore vicariously liable for the acts and omissions of their co-defendants, their agents and employees, as more fully alleged herein. Moreover, all of the Defendants and

identified persons agreed upon, approved, ratified, and/or conspired together to commit all of the acts and/or omissions alleged in this Complaint.

**FACTUAL ALLEGATIONS**

**Prior to the Warrantless Seizure**

12. RACHAEL was named the Sole-Managing Conservator of the minor, AVR, and **LARRY NORRIS ("LARRY")** was the acknowledged father of AVR pursuant to an agreement from a "Suit Affecting the Parent-Child Relationship" (SAPCR) which was overseen by the Texas Attorney General, who approved the Custody and Support order effective May of 2014. The order named Williamson County, Texas, the court of continuing jurisdiction. RACHAEL was briefly married to LARRY in August of 2015. LARRY filed for divorce in Travis County, Texas and filed a new SAPCR in December of 2015 with a court hearing scheduled for January 4, 2016

13. On January 23, 2016, LARRY and RACHAEL planned to meet at a local hotel so LARRY and his family who were in town could visit before RACHAEL and the child AVR returned home to Louisiana. Instead the mother, RACHAEL was met by Defendant DANZY at 4:55 P.M. who stated to her "You are supposed to be in Louisiana, you told me that's where you were going". RACHAEL responded "I have a court appearance tomorrow". DANZY then left and later around 6:00 P.M. returned accompanied by two police officers of the Austin Police Department, namely Officers DOBKIN and STAN. DANZY was in conspiracy with LARRY and used her position under color of state law filed a complaint with the Austin Police Department and asked for a Crisis Intervention Team and officers who were certified who could conduct a mental health examination of RACHAEL for the sole purpose of seizing the child. However, after the mental health exam was performed by the defendant police officers, nothing was found that would require the minor AVR to be taken from RACHAEL.

14. Without warning, Defendant DANZY then pulled the child from RACHAEL who was in RACHAEL's arms. DANZY then ran out of the hotel, and gave the child to LARRY even though

4
COMPLAINT

RACHAEL had full custody of AVR. There were no visitation orders in effect for LARRY at that time. DANZY under the color of state law seized the child without a Court Order or exigent circumstances. DANZY prior to seizing the child never gave RACHAEL a "Notice of Removal of Children" Form 2231es of TDFPS.

15. Defendant Police Officers after discovering there was no warrant or court order or any exigent circumstances after inquiring of DANZY still assisted TDFPS worker DANZY in seizing the child in violation of RACHAEL's constitutional rights. When RACHAEL attempted to get her child back by running after DANZY, the defendant police officers assisted DANZY by preventing RACHAEL from getting her child by threatening to arrest her if she pursued DANZY even though the officers both knew there was no warrant, no court order or exigent circumstances. The defendant officers had a duty to prevent DANZY from seizing the child.

16. RACHAEL called TDFPS on January 23, 2016 and was told that TDFPS had no record of the child being removed. DANZY apparently for unknown reasons coordinated with LARRY to kidnap the child AVR under the color of state law.

17. A Family Court hearing was previously scheduled for January 4, 2016. RACHAEL appeared with the minor AVR at 7 AM for the hearing but no hearing ever took place.

18. The child AVR **has not been returned** since the date of the removal, January 23, 2016 and there was never a hearing modifying conservatorship. **The whereabout of the child AVR is unknown at the time of this complaint.**

19. It is believed that LESLIE MASSAD, a social worker for either the City of Austin or TDFPS became involved in this case and assisted in the kidnapping of AVR and ultimately had the child illegally adopted out. Plaintiff is will amend this complaint or file a new complaint when further evidence is obtained.

## FIRST CAUSE OF ACTION

**(Against Defendants DANZY, DOBKIN, VICK and DOES 1 through 10, inclusive)**

**Violation of Plaintiffs' Federal Civil Rights (42 U.S.C. § 1983)**
**(Fourteenth Amendment Familial Association)**

20. Plaintiffs re-allege, and incorporates herein as if set forth in full, all of the preceding Paragraphs (1-19) above.

21. The right to be free from unreasonable searches and seizures and/or any unjustified separation from one's children is a right that is guaranteed under the Fourteenth Amendment to the United States Constitution. This right is so "clearly established" such that a reasonable social worker and/or police officer in Defendants' situation would know or should know that it is unlawful to remove a child from the care, custody, and control of its parents in the absence of exigent circumstances without first obtaining a warrant to do so.

22. Social Workers acting under state authority "may not remove children from their parents' custody without a court order unless there is specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse- See *Texas Family Code 262.104 et. seq.* See also *Gates v. Tex. Dep't of Protective & Regulatory,* 537 F. 3d 404 (5th circuit 2008). The court in its ruling at [438] clearly established the law in this area in 2008. See also *Wallis v. Spencer,* 202 F. 3d 1126, 1138 (9th Cir. 2000). The Ninth Circuit has found that "imminent" danger requires more than a general fear of abuse; social workers must have believed that a child might be injured in the "few hours" it would take to obtain a warrant- see *Anderson-Francois v. Cnty of Sonoma,* 415 F. Appx 6, 21 (9th Circ. 2011). Officials cannot lawfully remove a child absent "information at the time of the seizure that establishes "reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury- See *Mabe v. San Bernardino County,* 237 F. 3d 1101, 1106 (9th Cir. 2001).

23. It has also long been established that the "most essential basic aspect of familial privacy - the right of the family to remain together without the coercive interference of the awesome power of the state" *Wooley v. City of Baton Rouge,* 211 F.3d 913, 921 (5th Cir. 2000). Among other things, "the government may not seize a child from his or her parents absent a court order, parental consent, or exigent circumstances." Gates, 537 F.3d at 429. Similarly, "before a social worker can remove a child from a public school for the purpose of interviewing him in a central location without a court order, the social worker must have a reasonable belief that the child has been abused and probably will suffer further abuse upon his return home at the end of the school day." Id. at 433. Exigent circumstances are present if, "based on the totality of the circumstances, there is reasonable cause to believe that the child is in imminent danger of physical or sexual abuse if he remains in his home." Id. at 429. While the determination of exigency is a flexible one, the Fifth Circuit, in *Gates*, enumerated six specific factors courts should consider: (1) "whether there was time to obtain a court order," (2) "the nature of the abuse (its severity, duration, and frequency)," (3) "the strength of the evidence supporting the allegations of abuse," (4) "the risk that the parent will flee with the child," (5) "the possibility of less extreme solutions to the problem," and (6) "any harm to the child that might result from the removal." Id. Hence, as early as the publication of the *Gates* decision in 2008, social workers were put on reasonable notice of the six factors that the Court will consider in determining whether exigency supports a warrantless seizure of a child. Moreover, as observed by the Court, in a later decision, the essential requirement of "some evidence of imminent danger to a child" before removing a child without a warrant, was clearly established, even before the decision in *Gates. See Wernecke v. Garcia*, 591 F.3d 386, 400 (5th Cir. 2009) ("Wernecke") and *Wooley*, 211 F.3d at 925. Moreover, Texas unambiguously commands its social workers, by statute, to obtain a court order unless any of five enumerated conditions, including personal knowledge of exigent circumstances, is met. *See Tex. Fam. Code Ann.* § 262.104 (West).

24. DANZY possessed no evidence of exigent circumstances to justify the warrantless seizure of Plaintiff's child. Defendant DANZY had adequate opportunity to obtain a court order but never did. **Thus, DANZY is not entitled to qualified immunity.**

25.     Defendant Austin Police Officers, defendants DOBKIN and STAN, violated the 14th Amendment rights of the Plaintiffs by assisting in the seizure of the child AVR from her mother's arms by threatening RACHAEL and assisting DANZY in the removal of the child without a Court Order or Exigent Circumstances. In fact the defendant officers were also in violation of Tex. Fam. Code Ann. § 262.104 (West) pertaining to law enforcement officers as follows and which specifically indicates when a law enforcement officer can seize a child as follows:

1. If there is no time to obtain a temporary order, temporary restraining order, or attachment under Section 262.102(a) before taking possession of a child consistent with the health and safety of that child, an authorized representative of the Department of Family and Protective Services, **a law enforcement officer,** or a juvenile probation officer may take possession of a child <u>without</u> a court order under the following conditions, **only**:

2. on personal knowledge of facts that would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child;

3. on information furnished by another that has been corroborated by personal knowledge of facts and all of which taken together would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child;

4. on personal knowledge of facts that would lead a person of ordinary prudence and caution to believe that the child has been the victim of sexual abuse or of trafficking under <u>Section 20A.02</u> or 20A.03, Penal Code;

5. on information furnished by another that has been corroborated by personal knowledge of facts and all of which taken together would lead a person of ordinary prudence and caution to believe that the child has been the victim of sexual abuse or of trafficking under <u>Section 20A.02</u> or 20A.03, Penal Code; or

6. on information furnished by another that has been corroborated by personal knowledge of facts and all of which taken together would lead a person of ordinary prudence and caution to believe that the parent or person who has possession of the child is currently using a controlled substance as defined by Chapter 481, Health and Safety Code, and the use constitutes an immediate danger to the physical health or safety of the child.

26. Both officers DOBKIN and STAN assisted in the seizure of the children by threating to arrest Plaintiff RACHAEL if she attempted to get her child back from DANZY. Both defendant officers were in violation of the Texas Family Code Ann. § 262.104 (West) as both officers did <u>not</u> have personal knowledge that would lead them to believe the child was in imminent danger of harm. It

is believed that the Defendant Police Officers asked DANZY of the nature of the emergency and after discussions and their examination of RACHAEL knew there was no emergency but participated anyway in the unlawful seizure of the child because DANZY demanded a "Police Assist" to ensure that she could seize the child.. The police officers knew there was no emergency requiring the removal of the child from the mother's arms but participated anyway to comply with the request of Danzy and the policies of the Austin Police Department. Thus, both defendant police officers Dobkin and Stan are **not entitled** to qualified immunity.

27. As alleged hereinabove, Defendant DANZY had adequate time to apply for a warrant, but failed to do so. Said defendants had no reasonable basis for believing that Plaintiffs' child would suffer serious bodily injury or death if they failed to obtain a warrant. Defendants DANZY, DOBKIN, and STAN and DOES 1 through 10, inclusive, were acting under color of state law when they acted, or knew and agreed and thereby conspired, to unlawfully remove the child from the Plaintiff, as stated above without proper justification or authority, and without probable cause, exigency, or court order. The actions of the individual Defendants were taken with deliberate indifference to Plaintiffs' rights.

28. Defendants, and each of them, voluntarily collaborated, acted in concert, and maliciously conspired as individually and as employees of TDFPS and the Austin Police Department to violate the civil rights of the Plaintiffs, including violation of Plaintiffs' rights found in the Due Process Clause under the Fourteenth Amendment of the United States Constitution, by, *inter alia*, removing the child from the care, custody, and control of their mother RACHAEL. without a warrant and without exigent circumstances.

29. In so doing, these individual Defendants, and each of them, were acting under color of state law. They did these things without proper justification or authority. Further, Defendants' actions were taken with deliberate indifference to Plaintiff's due process rights, and in conscious disregard of Plaintiff's right to not be lied about by government agents/employees in any court proceeding where substantial rights were at stake. As the direct and proximate result of the aforementioned actions of the individual

Defendants, and DOES 1 and 10, and each of them, Plaintiff has suffered physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorney's fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

30. Based on information and belief, said defendants, and each of them, acted with malice and with the intent to cause injury to Plaintiffs, or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing Defendants and to deter them and others from such conduct in the future.

## SECOND CAUSE OF ACTION

**(42 U.S.C. Section 1983)**

**(Against defendant CITY OF AUSTIN)**
**(Monell Related Claims)**

31. Plaintiffs reallege, and incorporates herein as if set forth in full, all of the preceding Paragraphs (1-30) above.

32. Defendant City of Austin, including through its Police Department, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to civil liability pursuant to the doctrine outlined in *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. Individual Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of the rights of Plaintiffs.

33. Defendant City of Austin, including through its entity City of Austin Police Department, and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiffs all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide

the protections guaranteed under the United States Constitution.

34. Defendant City of Austin also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of its agents, officers, employees and those acting under them, including within its Police Department so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of the Plaintiffs in order to avoid causing the injuries and damages alleged herein.

35. Moreover, based on the duties charged to Defendant City of Austin and its policymaking officials, knew or should have known of the need to establish customs, policies, and practices required to protect the aforementioned civil rights of citizens with whom their Police Department regularly came into contact.

36. Defendant City of Austin its Police Department established, adopted, followed, and implemented or turned a blind eye to customs and practices which were followed, complied with, and carried out by its Police Department when the rights of the Plaintiffs were violated as stated above. Furthermore, Defendant City of Austin, by statute, and by long standing practice, worked closely in association with TDFPS and knew of the routine failure of TDFPS agents to obtain a warrant prior to seizing children.

37. At the time of the underlying events, the regularly established customs and practices of the City of Austin Police Department that were followed, adhered to, complied with, and carried out by Defendants, were the moving force, that is, the actual, direct, and proximate cause of the violations of the Plaintiffs' rights as follows but are not limited to: (a) the unlawful removal of children without a warrant and the unwritten policy of acting with deliberate indifference to the rights of citizens who rights were violated by its police department failing and/or refusing to implement a practice of regular and adequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing and ensuring compliance with the constitutional protections

guaranteed to individuals, including those under the Fourth and Fourteenth Amendments.

38. The City of Austin Police Department is aware that its police officers regular engage in the conduct Plaintiffs complains of. Nevertheless, the City of Austin has made a knowing and conscious decision to refrain from promulgating policies to prevent such misconduct, and has consistently and knowingly failed to provide any training to members of its Police Department with respect to Plaintiffs' complaint, or discipline its officers for such conduct.

39. The City of Austin's decision to disregard these constitutional protections in the face of a known need for such policies to prevent the specific misconduct alleged herein above — the known need for a specific policy prohibiting its police officers from violating citizens constitutional rights — is itself a "policy" decision which constitutes a policy of deliberate indifference.

40. None of the constitutional violations complained of and set forth above would have happened if Defendant City of Austin had honored its obligation to promulgate policies and train its police officers of the crucial constitutional prescriptions which govern their daily work.

41. These policies, customs, and practices that disregard the constitutional protections afforded to the most vulnerable citizens was a substantial factor in causing harm to the Plaintiff.

42. Thus, as a matter of law, because there was no formal policy preventing the misconduct described herein, even though one was obviously needed, the police officers on the line acted on behalf of the City in making final policy decisions — which is exactly what they did when they violated Plaintiffs' constitutional rights.

43. The state of the law regarding the constitutional protections afforded to Plaintiffs by the Fourteenth Amendment was clearly established well before the time Plaintiffs' constitutional rights were violated.

44. These actions and inactions of Defendant City of Austin were the moving force behind, and direct and proximate cause of Plaintiff's injuries and as a result that have sustained general and

special damages, to an extent and in an amount to be proven separately.

45. Plaintiffs are informed and believe and on such basis allege that Defendant officers DOBKIN and STAN individually and as employees of the City of Austin Police Department which is a component unit of the City of Austin voluntarily collaborated with and participated in the various actions approved by DEFENDANT DANZY to ensure the warrantless seizure of the child AVR at the time noted, and their removal from Plaintiffs' care. These Defendants, and each of them, knew or should have known that Plaintiffs' constitutional rights would be violated, inasmuch as there was no evidence that Plaintiff RACHAEL was placing the child in imminent danger of serious bodily injury or death—or any other danger for that matter. The acts of these Defendants, and each of them, were wrongful and unlawful, and Defendants knew it. Indeed, any government agent faced with similar circumstances would have known that it was wrongful and unlawful to seize the child AVR and threaten RACHAEL with arrest if she did not cooperate, or to wisely cause their seizure, from the care of Plaintiff under the circumstances then present.

46. On information and belief, DANZY sought the advice and consent of DOBKIN and STAN before the unlawful seizure of the child from the mother's arms. Once that advice was obtained both police officers acted together with DANZY who knowingly carried out the policies and procedures as stated above at the request of Defendant DANZY in that the defendant police officers knew or should have known that their actions were in violation of Plaintiffs' constitutional rights when they assisted Defendants DANZY in the warrantless seizure of AVR without a Court Order and exigent circumstances. The defendant police officers' violation of Plaintiffs' rights amounts to police misconduct.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. General damages and special damages according to proof, but in no event less than $1,000,000;

2. As against all individual defendants punitive damages as allowed by law;

3. Attorneys' fees pursuant to 42 U.S.C. § 1988, and any other appropriate statute;

4. Costs of suit incurred herein; and

5. Such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury of all issues so triable.

Dated: January 22, 2018

/s/ Edward A. Rose, Jr.
By Edward A. Rose, Jr. Attorney at Law
Edward A. Rose, Jr., Attorney at Law, PC
Attorney-in-Charge
State of Texas Bar No. 24081127
 3027 Marina Bay Drive  Suite 208
League City, Texas 77573
Phone: 713-581-6029
Fax: 832-201-9960
edrose@edroseattorneycpa.com
Attorney for Plaintiff